UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-60729-CIV-HUCK/O'SULLIVAN

ACT LENDING CORPORATION and
NELSON HAWS, JR.,

    Plaintiffs,

vs.

MORTGAGE INSURANCE AGENCY,
LTD., INC., and NATIONAL UNION
FIRE INSURANCE CO. OF
PITTSBURGH PENNSYLVANIA,

    Defendants.
_____/

**ORDER ON MOTION TO REMAND**

    This matter came before the Court on the Plaintiffs' Motion to Remand (D.E. #7), in which the plaintiffs seek an order remanding this action to the state circuit court because the defendants' removal was untimely. Having reviewed the Motion, the record, heard the argument of counsel, and being otherwise duly advised in the premises, this Court finds that the defendants removed the action within thirty days of obtaining legally sufficient information that the plaintiffs' claim met the amount-in-controversy requirement set forth in 28 U.S.C. § 1332. Accordingly, the notice of removal was timely filed, and the plaintiffs' motion to remand is denied.

    **I.**    **Factual and Procedural Background**

    Two state-court actions are relevant to this Court's determination of the timeliness of the notice of removal. One complaint, filed June 28, 2008, is *NattyMac Capital LLC v. Nelson S. Haws, Jr. and ACT Lending Corp.*, Case No.: 08-28458-12 (Fla. 17th Jud. Cir.) (the "NattyMac Action"). The other complaint, filed December 1, 2008, is *ACT Lending Corp. and Nelson Haws, Jr. v. Mortgage Ins. Agency Ltd., Inc. and Nat'l Union Fire Ins. Co. of Pittsburgh Penn.*, Case No.: 08-589839-14 (Fla. 17th Jud. Cir.) (the "ACT Lending Action"). The purpose of the ACT Lending Action is to recover the damages that ACT and Haws allegedly suffered when National Union Fire

Insurance Company of Pittsburgh ("National") and Mortgage Insurance Agency ("MIA") refused to cover a claim that ACT made under an insurance policy. ACT and Haws sought coverage for the factual scenario that underlies the NattyMac Action.

The complaints in the ACT Lending and NattyMac Actions recite the $15,000 jurisdictional amount required for access to Florida circuit courts.[1] The only other numerical information in either complaint about the amount in controversy is the mention of a $1.2 million claim in the NattyMac Action for breach of a promissory note.

### A. The NattyMac Action

The NattyMac Action consists of three counts: (1) breach of contract against ACT for breach of an agreement for the purchase and sale of residential mortgage loans, (2) negligence against ACT, and (3) breach of contract against ACT and Haws for breach of a promissory note.

NattyMac alleges that it agreed to purchase certain mortgage loans from ACT subject to conditions set forth in a written contract. As alleged in the complaint, once NattyMac purchased a mortgage, ACT would remain responsible for servicing the mortgage, and the contract required ACT to hold in trust any funds received in connection with the loans it serviced.

NattyMac, Haws, and ACT entered into a separate agreement under which ACT agreed to pay NattyMac $1,094,938.44 plus interest. As of the date of the complaint, NattyMac alleges that ACT owed in excess of $1.2 million under the promissory note.

Count I is for breach of the mortgage purchase-sale agreement. NattyMac alleges that ACT breached that agreement by failing to hold payments in trust, misapplying funds that were to be held in trust, breaching representations and warranties in the agreement, failing to cure the breaches, failing to make certain payments required under the agreement, and failing to repurchase certain loans as required by the agreement.

Count II is for negligence. That count alleges that ACT breached its duty to perform its services in a reasonable manner by failing to hold in trust payments it received under the servicing

---

[1] The ACT Lending Action included sufficient allegations to establish diversity of citizenship. ACT and Haws are Florida citizens while MIA is an Illinois citizen and National is a Pennsylvania citizen. Accordingly, the only issue before this Court is whether National and MIA had sufficient information in the pleadings to ascertain whether the amount in controversy exceeded $75,000.

arrangement, misapplying funds that ACT should have held in trust, and failing to take precautions to ensure that mortgages satisfied appropriate risk profiles.

Count III of the complaint is to recover the amount due under that promissory note.

### B.     The ACT Lending Action

The ACT Lending Action consists of four counts: (1) declaratory relief as to National, (2) breach of contract as to National, (3) breach of fiduciary duty as to MIA, and (4) negligence as to MIA.  The ACT Lending Action attaches the complaint in the NattyMac Action as an exhibit.

This complaint alleges that National issued a mortgage bankers/mortgage brokers Errors & Omissions policy to ACT that provided $300,000 in liability coverage.  NattyMac was the loss payee under the E&O policy.  MIA was an authorized representative of national and was an agent of National for purpose of receiving notice of claims.

As alleged in the complaint, while ACT was winding down its business it had conversations with two MIA employees to determine which policies ACT would allow to be cancelled and when the cancellations would occur.  Before cancelling the policy in question, ACT informed one of these employees of a potential claim by NattyMac for which ACT would be seeking coverage.  That employee told ACT that the claims would be eligible for coverage as long as the acts leading to the claims occurred while the policy was in place.  Accordingly, ACT allowed the policy to lapse.

After the policy lapsed, ACT made a claim based on NattyMac's allegations that ACT had breached and/or negligently performed its obligations to NattyMac.  National denied the claim because the E&O policy had been cancelled.

In Count I, ACT seeks a declaration that the E&O policy was in effect and National was obligated to defend and/or indemnify ACT for the claims asserted by NattyMac.  In Count II, ACT seeks damages from National for breach of the insurance contract.  In Count III, ACT seeks damages from MIA for breach of fiduciary duty alleging that, as ACT's broker, MIA had a duty to protect ACT and it breached that duty when it failed to protect ACT in connection with its claim under the E&O policy.  In Count IV, ACT seeks damages from MIA for negligence because MIA allegedly failed to communicate accurate information to ACT regarding the claims-making process, did not open an E&O claim for ACT, and made other omissions or misrepresentations.

### C.     The Federal Court Proceedings

On May 15, 2009, MIA (with National's consent) filed its notice of removal, removing the

ACT Lending Action to this Court. On June 15, 2009, ACT filed a motion to remand in which ACT argues that MIA should have known that ACT's claim against MIA exceeded $75,000 because MIA was or should have been aware of a default judgment for $1,293,694.88 that had been entered against ACT in the NattyMac Action.[2]

National and MIA respond that they lacked a good-faith basis to remove the ACT Lending Action until NattyMac's Chief Executive Officer testified at an April 17, 2009 deposition that the value of Counts I and II of the NattyMac Action exceeded $300,000. National and MIA also argue that ACT frequently ignored or provided misleading answers whenever National and MIA attempted to ascertain the amount in controversy. National and MIA were served with the ACT Lending Action in mid-December 2008. After accepting service of the complaint, National and MIA undertook the following steps to ascertain the amount in controversy:

| Date | Event |
|---|---|
| December 30, 2008 | National's counsel asks ACT's counsel about the amount in controversy and informs him that National would seek removal of the case. ACT's counsel replies that he would consider National's request and advise National's counsel accordingly. |
| December 31, 2008 | National's counsel drafts two letters to ACT's counsel regarding the amount in controversy. Ultimately, ACT's counsel does not respond to the letters. |
| January 14, 2009 | National's counsel e-mails ACT's counsel regarding the amount in controversy. ACT's counsel replies that he is skiing. |
| February 3, 2009 | National serves interrogatories and requests for admissions seeking to ascertain the amount in controversy.<br>In Interrogatory #3, National asks ACT to "state all damages" that ACT believes NattyMac is pursuing against it in the NattyMac Action and itemize each element of damages.<br>In Request for Admission #1, National asks ACT to "[a]dmit that the amount in controversy in the [ACT Lending Action] exceeds $75,000, exclusive of interests and costs." |
| February 16, 2009 | ACT responds to Request for Admission #1 as follows: "[ACT] is unable to admit or deny, as it seeks a determination of coverage as to [National's] policy." |

---

[2] ACT attached the default judgment as an exhibit to its motion to remand. The state court entered the default judgment against ACT "for failure to plead or otherwise defend the above caption [sic] action."

| | |
|---|---|
| March 25, 2009 | ACT responds to Interrogatory #3 as follows: "Unknown. This inquiry should be directed to NattyMac." |
| April 17, 2009 | NattyMac's CEO testifies that the value of NattyMac's claim against ACT exceeded $300,000 and NattyMac had obtained a judgment of more than $1 million against ACT. |

## II.   Analysis

Under 28 U.S.C. § 1446(b), a notice of removal must be filed within 30 days of the defendants' receipt of the complaint, but if the case stated in the complaint is not removable, the removal notice may be filed within 30 days of the defendants' receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case" is removable.

A removing defendant must establish the jurisdictional amount by a preponderance of the evidence. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208, 1210 (11th Cir. 2007). Where it is unclear whether the court has subject-matter jurisdiction, neither the court nor the defendants may speculate or determine whether there is jurisdiction by "looking to the stars." *Id.* at 1214-15. Indeed, counsel for the removing party has a Rule 11 obligation to remove a case only when he has a good faith basis for concluding that the district court has subject-matter jurisdiction. *Id.* at 1215 n.63. And it is "*highly questionable* whether a defendant could ever file a notice of removal on diversity grounds . . . where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice without seriously testing the limits of compliance with Rule 11." *Id.*

Courts recognize that a plaintiff will frequently attempt to frustrate a defendant's right to remove a case to federal court. *Id.* Accordingly, courts applying *Lowery* will often look to the efforts that the removing party has undertaken to ascertain the jurisdictional amount. *See, e.g., Middlebrooks v. Johnson & Johnson Co.*, No. 4:08-CV-54 (CDL), 2008 WL 4003926, at *3 (M.D. Ga. Aug. 26, 2008). In *Middlebrooks*, the defendant "sought an unambiguous statement from the [p]laintiff regarding the amount in controversy," but did not receive a conclusive statement that the amount in controversy exceeded the jurisdictional threshold until a hearing that occurred outside of the 30-day removal window. *Id.*

In *Middlebrooks*, the plaintiff sought redress from the defendants (pharmaceutical

5

companies) after the defendants' product allegedly led to the death of the plaintiff's son. *Id.* at *1. Accordingly, the plaintiff argued that the defendants should have been aware that the plaintiff was seeking more than $75,000 from the allegations in the complaint. The court rejected this argument, noting that the plaintiff's suggested inference would not satisfy, by a preponderance of the evidence, the defendants' burden to prove the jurisdictional amount. *Id.* at *3. The court further held that the plaintiff's argument that the jurisdictional amount was "readily deducible" from the complaint was "untenable in light of *Lowery*." *Id.*

National and MIA are similarly situated to the *Middlebrooks* defendants. Neither the NattyMac nor the ACT Lending Actions specify that the amount in controversy exceeds $75,000. While the tenor of the allegations in the NattyMac and ACT Lending Actions might suggest that the amount in controversy exceeds $75,000, removal on that basis would be improper because it is the type of speculative, looking-to-the-stars guesswork that the *Lowery* court condemned.

At oral argument, ACT argued that National and MIA should have known that the amount in controversy exceeded $75,000 based on a paragraph in the NattyMac Action stating the amount due under the promissory note. The complaint in the NattyMac Action includes 24 paragraphs of factual allegations. In a section titled "General Allegations Regarding the Promissory Note," NattyMac alleges that Haws and ACT owe NattyMac more than $1.2 million under the promissory note. NattyMac incorporates all 24 paragraphs of factual allegations, including the factual allegations related to the breach of the promissory note, into each of its three counts. Accordingly, NattyMac's counts for breach of the mortgage purchase-sale agreement (Count I) and negligence (Count II) include the allegations concerning the breach of the promissory note, even though the breach of the promissory note is distinct from the breach of the mortgage purchase-sale agreement and the negligence.

At oral argument, ACT conceded that if the NattyMac Action only concerned the breach of the promissory note, ACT would not look to National or MIA to recover any damages awarded to NattyMac. Nonetheless, ACT argues that National and MIA were on notice that the amount in controversy exceeded $75,000 because the $1.2 million figure relevant to the breach of the note was incorporated into the allegations that form the basis of the claims against National and MIA in the ACT Lending Action. This Court disagrees that National and MIA should have been on notice that ACT's claims against them exceeded $75,000 simply because NattyMac pled its claims against ACT

6

and Haws in such a manner that the allegations related to breach of the promissory note were incorporated into NattyMac's claims for breach of the mortgage purchase-sale agreement and negligence. A contrary holding would require this Court to endorse an inexact pleading practice and ignore the obvious (and conceded) fact that National and MIA bore no responsibility for insuring ACT and Haws' performance of their obligations under the promissory note.

Alternatively, ACT contends that National and MIA should have removed the ACT Lending Action within 30 days of entry of the March 2, 2009 default judgment in the NattyMac Action. In support of this contention, ACT merely states that the default judgment was "available" and, when it was entered, National and MIA were aware of the existence of the NattyMac Action. But neither National nor MIA obtained a copy of the default judgment in the NattyMac Action until after they took the deposition of NattyMac's CEO. And even if National and MIA had been trolling the Broward County Circuit Court's docket to determine whether that court had entered a judgment on the NattyMac Action, the default judgment itself would have answered none of National and MIA's questions because it does not specify whether the amount of the judgment is for the breach of the promissory note for which amount, by ACT's own concession, National and MIA are not responsible.[3]

National and MIA undertook prompt and substantial efforts to ascertain the amount in controversy. When National and MIA asked, ACT either ignored their inquiries or gave evasive answers regarding the amount in controversy. If, as ACT contends, it was so readily apparent that the amount in controversy exceeded $75,000, ACT could have (and should have) so advised National and MIA when asked. Instead, ACT forced National and MIA to take a deposition to obtain a response satisfying the demands of *Lowery*, and as soon as the National and MIA had a clear answer on the amount in controversy, they filed their notice of removal within the 30-day time-frame set forth in § 1446(b).

National and MIA understood that they had a Rule 11 obligation to determine the jurisdictional amount before attempting removal and knew that it was "highly questionable" whether

---

[3] In fact, before the inclusion of costs and attorneys' fees, the default judgment is for $1,252,335.84. This is the same amount sought in the NattyMac Action for breach of the note, suggesting that the default judgment does not address the claims for which ACT contends National and MIA should provide coverage.

they could discharge their Rule 11 obligation by removing based on the uninformative allegations contained in the pleadings. Accordingly, National and MIA properly waited to remove until they took the deposition of a person with information regarding the amount of the claim. Before obtaining that information through the deposition, National and MIA made substantial efforts to ascertain the amount in controversy, all of which were met with ACT's resistance.

### III.   Conclusion

For all of the foregoing reasons, ACT's motion to remand is denied.

DONE and ORDERED in Chambers, Miami, Florida, August 27, 2009.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record